IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Berkeley - Dorchester Counties Economic Development Corp., ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | C.A. No. 2:04-22950-23 |
| ) | **ORDER** |
| United States Department of Health and ) Human Services, Administration for ) Children and Families; Windy M. Hill, ) as Associate Commissioner of the Head ) Start Bureau, Administration for Children ) and Families. ) | |
| Defendants. ) ) | |

      This matter is before the court upon five pending motions: (1) Defendant United States Department of Health and Human Services ("HHS"), Administration for Children and Families's ("ACF")[1] Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6); (2) Defendant Windy M. Hill's Motion to Dismiss the claims asserted against her in her individual capacity pursuant to Fed. R. Civ. P. 12(b)(1) and (6); (3) Plaintiff Berkeley-Dorchester Economic Development Corporation ("Berkeley-Dorchester") Motion to Set Aside the Government's Certification of Defendant Windy Hill's Employment and for Discovery on the Scope of Commissioner Hill's Employment; (4) Plaintiff Berkeley-Dorchester's Motion for Leave to File a Second Amended Complaint; and (5) Berkeley-Dorchester's Amended Motion for Leave to File a Revised Second Amended Complaint. For the reasons set forth herein, the court grants Berkeley-Dorchester's Amended Motion for Leave to File a Revised Second Complaint and denies Berkeley-Dorchester's Motion to Set Aside the Government's Certification of Defendant Windy Hill's Employment. The court finds HHS/ACF's

---

[1] For ease of reference, the court refers to ACF/HHS's as "the Government" throughout this Order.

and Hill's motion to dismiss and Berkeley-Dorchester motion for leave to file a second amended complaint moot.

## BACKGROUND

Plaintiff Berkeley-Dorchester is a South Carolina non-profit corporation that has served as a grantee under the federal Head Start program since the 1960s. The Head Start program is designed to provide qualified low-income children with pre-elementary instruction to enable them to succeed when they enter school, and is administered at the federal level by the DHSS's ACF. The program provides grants to local community-based non-profit organizations and school systems (such as Berkeley-Dorchester), with grant awards being made directly from ACF regional offices to the local entities. Defendant Windy M. Hill ("Hill") served as the Associate Commissioner of the Head Start Bureau of ACF during the events giving rise to Berkeley-Dorchester's claims; Defendant Hill apparently resigned from her post with ACF/HHS in late May of 2005.

The allegations of the present matter center on events that began in June of 2004, when ACF conducted on-site reviews of Charleston-area Head Start facilities run by Berkeley-Dorchester. Several months later, in September of 2004, ACF provided Berkeley-Dorchester with a Head Start Review Report ("Report") in which it notified Berkeley-Dorchester that it believed there were floor tiles containing asbestos at three of its facilities (John's Island, Awendaw, and New Isreal), as well as myriad other alleged deficiencies in Berkeley-Dorchester's facilities. ACF required Berkeley-Dorchester to submit evidence that the three facilities did not present an asbestos hazard within ten days. Berkeley-Dorchester submitted evidence that it deemed sufficient to demonstrate that there was no asbestos risk. The Government disagreed, and summarily suspended Berkeley-Dorchester's financial assistance on November 9, 2004. The next day, the parties had an informal meeting, at

which Berkeley-Dorchester attempted to present new evidence of the lack of an asbestos problem. According to Berkeley-Dorchester, Defendant Hill refused to consider any of the proffered evidence and was already in the process of giving a new grantee responsibility for the centers.

On November 10, 2004, Berkeley-Dorchester commenced this lawsuit seeking declaratory and injunctive relief. The court heard Berkeley-Dorchester's motion for a preliminary injunction on November 12, 2004. The court ordered that a temporary restraining order was to remain in effect for a ten day period and was to preserve the status quo by preventing Defendants from taking any further actions to carry out the suspension.

On November 17, 2004, Defendant Hill rescinded the summary suspension, but imposed prior deadlines by which Berkeley-Dorchester had to make its certifications of corrective action. Although this was allegedly an almost impossible task according to Berkeley-Dorchester, it met Hill's deadlines. On November 22, 2004, Berkeley- Dorchester filed an Amended Complaint adding the following causes of action against Defendant Hill: (1) a *Bivens* claim for violation of Constitutional protections; (2) civil conspiracy; (3) violations of 42 U.S.C. 1985 and 1986; and (4) slander. Additionally, Berkeley Dorchester asserted a claim for further declaratory and injunctive relief barring Defendants from imposing unreasonable time frames and taking any adverse action against Defendants for their failure to comply with such time frames.[2]

After the Amended Complaint was filed, the Government conducted additional inspections

---

[2] Accordingly, the following causes of action are currently before the court: (1) injunctive relief seeking to prevent the Government from effectuating the threatened summary suspension ("Count One"); (2) declaratory relief based on the same premises ("Count Two"); (3) a *Bivens* claim against Defendant Hill ("Count Three"); (4) conspiracy against Defendant Hill ("Count Four"); (5) violations of 42 U.S.C. §§ 1985 and 1986 by Defendant Hill ("Count Five"); (6) slander against Defendant Hill ("Count Six"), and (7) additional declaratory and injunctive relief ("Count Seven").

3

of the three facilities from December 13-16, 2004 to confirm and verify that corrective actions had been taken. On January 21, 2005, Defendant HHS/ACF[3] moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Primarily because the results of the December inspections had not been released, the court ruled that supplemental briefing and a hearing were required to resolve the motion to dismiss. Specifically, the court ruled that it needed more information on, *inter alia*, the status quo of the dealings between the parties, the likely course of future actions, whether any of Berkeley-Dorchester's claims were ripe or moot, and what damages, if any, Berkeley-Dorchester had incurred as a result of Defendants' actions.

On March 2, 2005, Berkeley-Dorchester received two letters from Defendant Hill. The first letter, dated February 28, 2005, purported to terminate assistance to Berkeley-Dorchester's facilities, alleging "new deficiencies" were found during the December inspections. Curiously, this letter (while purporting to terminate assistance) required corrective action be taken within thirty days. The second letter, dated March 2, 2005, required that Berkeley-Dorchester take corrective action to cure new areas of noncompliance within ninety days, or else Defendant Hill would use those areas of non-compliance as a grounds for termination.

After receiving these letters, Berkeley-Dorchester requested a minimum extension of 180 days to develop and implement a Quality Improvement Plan ("QIP"), which would address the areas of concern cited by the Government. Berkeley-Dorchester also requested training and technical

---

[3] This motion was filed by a United States Attorney within the District of South Carolina, and did not specify whether it was filed solely on behalf of HHS/ACF or whether it additionally was filed on behalf of Defendant Hill in her individual capacity. While the motion was filed on behalf of "Defendant United States," the motion raised a number of defenses specific to Hill in her individual capacity. On May 19, 2005, Defendant Hill responded for the first time in her individual capacity in response to the court's supplemental briefing order.

assistance. Defendant Hill rejected these requests. On March 31, 2005, Berkeley-Dorchester filed a motion with HHS Appeals Board to dismiss Defendant Hill's February 28th letter purporting to terminate financial assistance. ACF moved for a stay until after yet another on-site inspection could be performed. While this was supposed to occur in June, two reviewers arrived unannounced prior to this date on May 16,2005. The court remains unaware of any factual developments occurring since May 16, 2005.[4]

## ANALYSIS

As is apparent from the Background section of this order, this matter has presented the court with ever-changing factual developments, which have in turn produced myriad motions. In an attempt to clarify the status quo and move the litigation forward in an orderly manner, the court rules on two pending motions only: Berkeley-Dorchester's opposition to the Government's Certification of Hill's Employment, and Berkeley-Dorchester's Amended Motion for Leave to File a Revised Second Amended Complaint. The court finds moot all previously filed motions to dismiss, and directs the parties to file responsive pleadings to Berkeley-Dorchester's Second Amended Complaint.

The court first addresses the propriety of the Government's certification that Hill was acting in her official capacity at all relevant times, and then considers Berkeley-Dorchester's request for leave to file a revised second amended complaint.

### A.    Berkeley-Dorchester's Opposition to the Government's Certification of Hill's Employment

---

[4] While somewhat unclear based on the February 28th and March 2nd letters, according to the Government, as of May 19, Berkeley-Dorchester remains in place as grantee "notwithstanding the pendent termination, which it has appealed." (Gov. Supp. Mem. at 19.)

After Berkeley-Dorchester amended its complaint to add claims against Defendant Hill in her individual capacity, the Government, on May 2, 2005, filed a Certification of Employment in which a United States Attorney affirms that he has "inquired into and evaluated the circumstances surrounding the incidents in question in the captioned action, and that Defendant Windy M. Hill was acting within the scope of her employment as an employee of the United States at the times material to Plaintiff's action." (Cert. of Employment at 1-2.) Accordingly, the Government contends that the United States of America should be deemed the party defendant to the slander and conspiracy claims asserted against Ms. Hill.[5]

Berkeley-Dorchester opposes the certification of Hill's employment, as it wishes to pursue its tort claims against Hill in her individual capacity. Essentially, Berkeley-Dorchester's argument opposing certification is that Defendant Hill was acting "beyond her authority and outside the scope of her employment" in "her campaign to deprive Berkeley-Dorchester of its Head Start Program." (Pl. Mot. in Opp. to Cert. at 1-2, 4.) Berkeley-Dorchester contends that Hill "lacks any direct oversight for Head Start Program grantees, such as Berkeley-Dorchester, that are located in ACF Region IV." (Pl. Mot. in Opp. to Cert. at 2.)

The Federal Employee Liability Reform and Tort Compensation Act of 1988, commonly

---

[5] As a threshold matter, although the United States may be substituted for a federal employee accused of committing a tort within the scope of his employment under the Westfall Act, 28 U.S.C. § 2679(d)(1), the Act does not apply to an action against an employee which is brought for a violation of the Constitution or a federal statute authorizing action against federal officials. 28 U.S.C. § 2679(b)(2)(A); *see also Sterling v. United States*, 85 F.3d 1225, 1228 (7th Cir. 1996). Instead, an action seeking only monetary relief from individual federal officials for a constitutional violation may brought as a *Bivens* action "to avoid the sovereign immunity that would block an action against the United States." *Sterling,* 85 F.3d at 1228-29. Accordingly, the question of whether the United States will be substituted for Defendant Hill is only relevant to Berkeley-Dorchester's slander and civil conspiracy claims, as the *Bivens* and § 1985/1986 claims are properly asserted against Hill in her individual capacity.

6

known as the Westfall Act amendment to the FTCA, provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

*See* 28 U.S.C. § 2679(d)(1).[6] Thus, upon certification by the United States Attorney that Defendant Hill was acting within the scope of her employment at the time of the alleged acts, the United States must be substituted for Hill on the slander and conspiracy claims. However, when a certification decision is challenged, as in this case, the appropriateness of substitution is subject to judicial review. *Borneman v. U.S.,* 213 F.3d 819, 825 (4th Cir. 2000). When a district court reviews this issue, the United State's certification "serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Gutierrez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1153 (4th Cir. 1997), *cert. denied,* 522 U.S. 931 (1997). "In assessing whether the plaintiff has rebutted the prima facie case, however, the district court should not defer to the Attorney General's certification, but should instead review the question de novo." *Id.* at 1154. To carry its burden, the plaintiff must submit "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Id.* at 1155.[7]

---

[6] "[I]mmunity under the Westfall Act, like other forms of absolute and qualified immunity, is an immunity from suit rather than a mere defense to liability." *Gutierrez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1154 (4th Cir. 1997)

[7] In *Gutierrez,* 111 F.3d at 1153, the Fourth Circuit also noted that "[o]nly if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue

In making the ultimate determination as to whether certification should stand, the district court must apply the law of the state where the alleged tort occurred to ascertain whether the federal employee was acting within the scope of his employment. *See Borneman v. U.S.,* 213 F.3d 819 (4th Cir. 2000). Neither party disputes that South Carolina law applies here. Pursuant to South Carolina law, "[i]f a servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority." *Murphy v. Jefferson Pilot Communications Co.,* 613 S.E. 2d 808, 812 (S.C. 2005); *see also Jamison v. Howard,* 247 S.E.2d 450, 451 (1978) (holding that under South Carolina law, an act falls within the scope of employment even if the employee exceeded his or her authority and even if the employee acted contrary to the express orders of the employer); *South Carolina Budget & Control Board v. Prince,* 403 S.E. 2d 643, 646-47 (S.C. 1991). Moreover, "if there is doubt as to whether a servant was acting within the scope of his employment, the doubt will be resolved against the master." *Prince,* 403 S.E. 2d at 647.

Here, Berkeley-Dorchester argues that Hill acted outside of her scope of employment, and thus, the Government's certification must be stricken. *See, e.g.,* Pl. Mot. in Opp. to Cert. at 2. (arguing that certification is inappropriate because Hill "lacks any direct oversight for Head Start Program grantees, such as Berkeley-Dorchester, that are located in ACF Region IV.") According to Berkeley-Dorchester, Hill's actions taken outside the scope of her employment include: (1) various actions in regulating Berkeley-Dorchester that are beyond the scope of Hill's oversight authority; (2) releasing allegedly false and misleading statements to Charleston newspapers

---

should the federal employee be burdened with discovery and an evidentiary hearing." Here, the court believes the record is sufficiently developed and that no genuine questions of material fact warrant additional discovery or an evidentiary hearing on the scope of Hill's employment.

regarding the status of Berkeley-Dorchester's Head Start program; (3) revealing to the media that Berkeley-Dorchester is the subject of a pending federal grand jury investigation; and (4) various other administrative actions, including the issuance of the February 28th termination letter, which Berkeley-Dorchester claims was not done in accordance with relevant Head Start program requirements.  (Pl. Opp. to Cert. at 3-4.)

Applying South Carolina law - which takes a decidedly broad view of acts in furtherance of the master's business - it is irrelevant that Hill may have taken actions with respect to Berkeley-Dorchester that were outside of the technical scope of her authority as Associate Commissioner.  *See Murphy,* 613 S.E. 2d at 812.  Instead, the relevant inquiry is whether Hill was acting in furtherance of HHS/ACF's business in her dealings with Berkeley-Dorchester.  After a thorough review of the record, including both parties' briefs and Hill's affidavit, the court finds that Berkeley-Dorchester has not submitted specific evidence to rebut the Government's certification.  In fact, Berkeley-Dorchester offers no evidence whatsoever to support its theory that Hill's actions were taken in a concerted attempt to deprive Berkeley-Dorchester of its Head Start grant at any cost.  With respect to the slander claim, the Government has provided an Affidavit from Defendant Hill in which she affirms that newspapers regularly contacted her, in her role as Associate Commissioner, for information on Berkeley-Dorchester's Head Start Program.  (Hill Aff. at ¶ 8.)  Hill further affirms that she did not inform the press of the ongoing grand jury investigation, because she did not have any information concerning that investigation.  *Id.*  Moreover, even if Hill made statements to the press that were allegedly untruthful or misleading, Hill was nonetheless rendering those statements solely in her capacity as an official of HHS/ACF tasked with overseeing the Head Start program. *See, e.g., Prince*, 403 S.E. 2d at 647 (finding an employee's alleged slander to be committed within

9

the scope of his employment under South Carolina law; "[a]lthough Prince was acting without the express authorization of the School Board, his activities were not wholly disconnected from the business of the School District such that he was acting outside the scope of his employment."); *see also Crittenden,* 403 S.E. 2d at 387 (finding an employee's assault to be within the scope of his employment because, among other factors, the employee's relationship with the injured party "arose solely from his position as [the employer's] employee.").

Berkeley-Dorchester's conspiracy claims are even more inherently related to Hill's role as Associate Commissioner. In its Amended Complaint, Berkeley-Dorchester complains that Hill "conspired to terminate Berkeley-Dorchester of its Head Start Program grant . . ." by "pursuing multiple, time consuming and resource wasting reviews of Berkeley Dorchester's Head Start Program; releasing misleading information and inaccurate information about Berkeley-Dorchester's Head Start program to the media . . . issuing a summary suspension of financial assistance to Berkeley-Dorchester's Head Start Program." (Am. Compl. at ¶ 51.) As with the slander claim, each of these actions was taken in Hill's performance of her job with HHS, as it is undeniable that Hill's review of Berkeley-Dorchester and issuance of a summary suspension were in furtherance of her job as Associate Commissioner. On the whole, given that the only relationship between the parties arose by virtue of Hill's position as Assistant Commissioner and because all of the allegedly illegal actions involved the business of ACF and the federal Head Start program, the court refuses to strike the Government's certification. *See, e.g. Pauly v. U.S. Dept. of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003) (holding that official of Farmers Home Administration was acting within the scope of his employment when he negotiated agreement with farmers, and therefore under the Westfall Act, the district court properly substituted United States for government official as a defendant with

10

respect to farmers' claims based on official's conveyance of allegedly inaccurate information to farmers); *Council on American Islamic Relations, Inc. v. Ballenger,* 366 F.Supp. 2d 28, 31-32 (D.D.C. 2005). The Government, therefore, is substituted as the party defendant on Berkeley-Dorchester's slander and conspiracy claims.

### B.     Berkeley-Dorchester's Amended Motion for Leave to File a Revised Second Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). While the decision to grant a party leave to amend a pleading is within the sound discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

In exercising its discretion to amend, a court should focus on factors like "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Mere delay unaccompanied by prejudice, bad faith, or futility in moving to amend is not a sufficient reason to deny leave to amend. *See Island Creek Coal Co.*, 832 F.2d at 279. The Fourth Circuit has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999). Moreover, the Supreme Court has declared that leave to amend "shall be freely given when justice so requires." *Foman,* 371 U.S. at 182.

11

Here, the court believes that Berkeley-Dorchester's amended motion for leave to file a revised second amended complaint should be granted. First, significant factual developments have occurred since Berkeley-Dorchester filed its amended complaint. *See, e.g. Franks v. Ross,* 313 F.3d 184, 193 (4th Cir. 2002). Additionally, until recently, the parties have been engaged in settlement negotiations, and the court has not ruled on any pending dispositive motions, nor has a scheduling order been entered. Accordingly, the Government will not be prejudiced by Berkeley-Dorchester's amendment. Moreover, Berkeley-Dorchester is not acting in bad faith in moving to amend, but rather, attempts to present more detailed factual allegations in response to issues raised in the court's supplemental briefing request and in the pending motions to dismiss.

Further, because the revised second amended complaint will more clearly delineate the claims for relief, the court believes allowing amendment will aid in resolving the case on the merits. *See, e.g., Pittston*, 199 F.3d at 705 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Despite the Government and Hill's arguments to the contrary, the court does not believe that Berkeley-Dorchester's amendment is futile, as Berkeley-Dorchester seeks to raise a potentially viable Administrative Procedures Act claim (as well as additional claims for injunctive relief). *See Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510-11 (4th Cir. 1986) (holding that for a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face."); *see also, Rambus, Inc. v. Infineon Tech., AG,* 304 F.Supp.2d 812, 819 (E.D.Va. 2004) ("Courts generally favor the 'resolution of cases on their merits' . . . [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, e.g., motions to dismiss or for summary judgment, ..., or for resolution at trial."). In short, allowing Berkeley-Dorchester

leave to amend is in the interests of justice and judicial economy. Accordingly, the court grants Berkeley-Dorchester's motion, and directs the Government and/or Hill to file appropriate responsive pleadings to the revised Second Amended Complaint. Because Berkeley-Dorchester is afforded leave to amend, all previously filed motions to dismiss are hereby rendered moot.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Berkeley-Dorchester's Motion in Opposition to the Government's Certification of the Scope of Employment of Defendant Windy M. Hill and in Opposition to the Substitution of the United States as a Party (Doc. # 25) is **DENIED,** and the Government is hereby substituted as the party defendant on Counts Four (slander) and Six (conspiracy).

It is further **ORDERED** that Berkeley-Dorchester's Amended Motion for Leave to File a Revised Second Amended Complaint (Doc. # 46) is hereby **GRANTED.** Berkeley-Dorchester's Motion for Leave to File a Second Amended Complaint (Doc. # 31) is **MOOT.**

It is further **ORDERED** that the Government's Motion to Dismiss (Doc. # 12) and Defendant Hill's Motion to Dismiss (Doc. # 22) are rendered **MOOT,** and the Government and/or Hill are directed to file responsive pleadings to the revised second amended complaint.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, SC**
**August 31, 2005**