IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Berkeley-Dorchester Counties Economic Development Corp., | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2:04-22950-23 |
| | ) | |
| United States Department of Health and Human Services, Administration for Children and Families; Windy M. Hill, as Associate Commissioner of the Head Start Bureau, Administration for Children and Families. | ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) | |

This matter is before the court upon the following motions: (1) Defendant Wendy M. Hill's ("Hill") motion to dismiss the claims asserted against her in her individual capacity pursuant to Fed. R. Civ. P. 12(b)(2), (5), or (6), or in the alternative Fed. R. Civ. P. 56; (2) Defendant United States Department of Health and Human Services ("HHS"), Administration for Children and Families' ("ACF")[1] motion to dismiss Plaintiff's Complaint, Amended Complaint, and Revised Second Amended Complaint for lack of subject matter jurisdiction over Counts One, Two, Four, Six, Seven, and Eight, and for failure to state a claim upon which relief can be granted as to Count Nine, pursuant to Fed. R. Civ. P. 12(b)(1) and (6); and (3) Defendant Hill's motion to strike pursuant to Fed. R. Civ. P. 56(g). For the reasons set forth herein, the court grants both Defendant Hill's motion to dismiss and the Government's motion to dismiss. Defendant Hill's motion to strike is therefore rendered moot.

---

[1] For ease of reference, the court refers to Defendant HHS/ACF as "the Government" throughout this Order.

## BACKGROUND

Plaintiff Berkeley Dorchester is a South Carolina non-profit corporation that has served as a grantee under the federal Head Start program since the 1960s. The Head Start program is designed to provide qualified low-income children with pre-elementary instruction to enable them to succeed when they enter school and is administered at the federal level by the HSS's ACF. The program provides grants to local, community-based, non-profit organizations and school systems (such as Berkeley-Dorchester), with grant awards being made directly from ACF regional offices to the local entities. Defendant Hill served as the Associate Commissioner of the Head Start Bureau of ACF during the events giving rise to Berkeley-Dorchester's claims; Defendant Hill resigned from her post in late May of 2005.

The allegations of the present matter center on events that began in June of 2004, when ACF conducted on-site reviews of Charleston-area Head Start facilities run by Berkeley-Dorchester. Several months later, in September of 2004, ACF provided Berkeley-Dorchester with a Head Start Review Report ("Report") in which it notified Berkeley-Dorchester that it believed that there were floor tiles containing asbestos at three of its facilities (John's Island, Awendaw, and New Isreal), in addition to myriad other alleged deficiencies in Berkeley-Dorchester's facilities. ACF required Berkeley-Dorchester to submit evidence within ten days that the three facilities did not present an asbestos hazard. Berkeley-Dorchester submitted evidence that it deemed sufficient to demonstrate that there was no asbestos risk. However, the Government disagreed and summarily suspended Berkeley-Dorchester's financial assistance on November 9, 2004. The next day, the parties held an informal meeting at which Berkeley-Dorchester attempted to present new evidence of the lack of an asbestos risk. According to Berkeley-Dorchester, Defendant Hill refused to consider the

2

proffered evidence and was already in the process of giving responsibility for the centers to a new grantee.

On November 10, 2004, Berkeley-Dorchester commenced this lawsuit seeking declaratory and injunctive relief. Quickly thereafter, on November 12, 2004, the court heard Berkeley-Dorchester's motion for a preliminary injunction. The court ordered that a temporary restraining order was to remain in effect for a ten-day period to preserve the status quo by preventing Defendants from taking any further actions to carry out the suspension.

On November 17, 2004, Defendant Hill rescinded the summary suspension, but she imposed deadlines by which Berkeley-Dorchester had to make its certifications of corrective action. Although this was allegedly an almost impossible task according to Berkeley-Dorchester, it met Hill's deadlines. On November 22, 2004, Berkeley- Dorchester filed an Amended Complaint adding the following causes of action against Hill: (1) a *Bivens* claim for violation of Constitutional protections; (2) civil conspiracy; (3) violations of 42 U.S.C. §§ 1985 and 1986; and (4) slander. Additionally, Berkeley Dorchester asserted a claim for further declaratory and injunctive relief barring Defendants from imposing unreasonable time frames and from taking any adverse action against Berkeley-Dorchester for their failure to comply with such time frames.

After Plaintiff filed the Amended Complaint, the Government conducted additional inspections of the three facilities from December 13-16, 2004, to confirm and verify that corrective actions had been taken. On January 21, 2005, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Primarily because the results of the December inspections had not been released, the court required supplemental briefing and a hearing to resolve the motion to dismiss. Specifically, the court ruled that it needed more information on, *inter alia*, the status quo of the

3

dealings between the parties, the likely course of future actions, whether any of Berkeley-Dorchester's claims were ripe or moot, and what damages, if any, Berkeley-Dorchester incurred as a result of Defendants' actions.

On March 2, 2005, Berkeley-Dorchester received two letters from Defendant Hill. The first letter, dated February 28, 2005, purported to terminate assistance to Berkeley-Dorchester's facilities, alleging that "new deficiencies" were found during the December inspections. Curiously, this letter (while purporting to terminate assistance) required corrective action be taken within thirty days. The second letter, dated March 2, 2005, required that Berkeley-Dorchester take corrective action to cure new areas of noncompliance within ninety days, or else Defendant Hill would use those areas of non-compliance as a grounds for termination.

After receiving these letters, Berkeley-Dorchester requested a minimum extension of 180 days to develop and implement a Quality Improvement Plan ("QIP"), which would address the areas of concern cited by the Government. Berkeley-Dorchester also requested training and technical assistance. Defendant Hill rejected these requests. On March 31, 2005, Berkeley-Dorchester filed a motion with the HHS Departmental Appeals Board ("DAB") to dismiss Defendant Hill's February 28th letter purporting to terminate financial assistance, alleging that the letter failed to satisfy three of the six standards for a valid notice of termination of financial assistance, pursuant to 45 C.F.R. § 1303.14(c). On April 7, 2005, the DAB ordered ACF either to issue a revised termination letter or to file a response to Berkeley-Dorchester's motion within 21 days. However, ACF did not follow the DAB's order and instead moved for a stay until after yet another on-site inspection could be performed. According to the Government, the report from the additional on-site inspection required significant time to analyze and has not yet been issued. According to Berkeley-Dorchester, the DAB

4

formally closed all administrative proceedings regarding this matter on June 7, 2005.

Meanwhile, on May 2, 2005, after Berkeley-Dorchester had amended its Complaint to add claims against Defendant Hill in her individual capacity, the Acting United States Attorney for the District of South Carolina certified that Defendant Hill was acting in the scope of her employment as an employee of the United States at the time relevant to this suit. However, on May 19, 2005, Berkeley-Dorchester filed a motion challenging the certification and requesting discovery regarding the scope of Hill's employment. Essentially, Berkeley-Dorchester argued that Hill was not acting within the scope of her employment if her actions were unauthorized. The day before Berkeley-Dorchester filed its motion challenging the certification, the Government filed a motion to dismiss on behalf of Defendant Hill in her individual capacity. Additionally, some time in the end of May, Defendant Hill resigned from her position as Associate Commissioner of the Head Start Bureau.[2]

On May 20, 2005, Berkeley-Dorchester filed a motion for leave to file a Second Amended Complaint in light of recent factual development, and on August 22, 2005, Berkeley-Dorchester moved to file a Revised Second Amended Complaint. On August 31, 2005, in an attempt to clarify the status quo and to move the litigation forward in an orderly manner, this court filed an Order, ruling on only two of the pending motions and mooting the rest of the previously filed motions. First, with respect to Berkeley-Dorchester's motion challenging the certification of Hill's scope of employment, the court found that Berkeley-Dorchester had not submitted specific evidence to rebut

---

[2] On or about May 27, 2005, Wade F. Horn, the HHS Assistant Secretary for Children and Families, delegated the authority to conduct reviews of the Head Start program and to make determinations regarding deficiencies and areas of noncompliance to the Commissioner of the Administration for Children, Youth, and Families and to the Associate Commissioner of the Head Start Bureau. Also, in this same document, Horn purported to ratify all actions of the Commissioner and Associate Commissioner prior to this time.

the Government's certification.  Thus, the court denied Berkeley-Dorchester's motion to set aside the certification of Hill's employment.[3]  Second, with respect to  Berkeley-Dorchester's motion for leave to file a Revised Second Amended Complaint, the court granted the motion in the interests of justice and judicial economy and directed the Government and/or Hill to file appropriate responsive pleadings to the Revised Second Amended Complaint.  Because the court granted Berkeley-Dorchester's motion for leave to file a Revised Second Amended Complaint, the court rendered all other previously-filed motions moot.

After Berkeley-Dorchester filed its Revised Second Amended Complaint, Defendant Hill again moved to dismiss the claims asserted against her in her individual capacity pursuant to Fed. R. Civ. P. 12(b)(2), (5), or (6), or in the alternative Fed. R. Civ. P. 56.  Also, on October 27, 2005, the Government moved to dismiss Plaintiff's Complaint, Amended Complaint, and Revised Second Amended Complaint for lack of subject matter jurisdiction over Counts One, Two, Four, Six, Seven, and Eight and for failure to state a claim upon which relief can be granted as to Count Nine, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

On November 30, 2005, counsel for Plaintiff submitted an affidavit arguing that "the court's

---

[3]  The Westfall Act amendment to the Federal Tort Claims Act ("FTCA") provides the following:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d).  Accordingly, because the court denied Berkeley-Dorchester's Motion to set aside the Government's certification, the court substituted the United States for Defendant Hill on the conspiracy and slander claims (counts four and six).

6

determination regarding the fifth and sixth causes of action, as well as conversion of Hill's motion to dismiss to a motion for summary judgment, should be continued to allow depositions to be taken and additional written discovery to be had."  (Aff. of Tecklenburg at 2.) On December 16, 2005, Defendant Hill moved to strike Attorney Tecklenburg's affidavit, alleging that the affidavit has no basis in law or fact and stating that the court should dismiss Hill from this action without further discovery.

Therefore, at this point, the court is faced with the following three motions: (1) Defendant Hill's motion to dismiss the claims asserted against her in her individual capacity pursuant to Fed. R. Civ. P. 12(b)(2), (5), or (6), or in the alternative Fed. R. Civ. P. 56; (2) the Government's Motion to Dismiss Plaintiff's Complaint, Amended Complaint, and Revised Second Amended Complaint for lack of subject matter jurisdiction over Counts One, Two, Four, Six, Seven, and Eight, and for failure to state a claim upon which relief can be granted as to Count Nine, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and (3) Defendant Hill's motion to strike Attorney Tecklenburg's Affidavit pursuant to Fed. R. Civ. P. 56(g).[4]

---

[4] As previously mentioned, this court's August 31, 2005 Order substituted the United States for Defendant Hill as the party defendant in Berkeley-Dorchester's conspiracy and slander claims (Counts Four and Six).  Additionally, Berkeley-Dorchester's Revised Second Amended Complaint added two more claims against Defendants.  Accordingly, at this point, Berkeley-Dorchester's Complaint includes the following nine counts: (1) a claim for injunctive relief to prevent the Government from effectuating the threatened summary suspension ("Count One"); (2) a claim for declaratory relief based on the same premise ("Count Two"); (3) a *Bivens* claim against Defendant Hill ("Count Three"); (4) a conspiracy claim against the United States ("Count Four"); (5) violations of 42 U.S.C. §§ 1985 and 1986 by Defendant Hill ("Count Five"); (6) a slander claim against the United States ("Count Six"); (7) a claim for additional declaratory and injunctive relief ("Count Seven"); (8) a claim for violation of the Administrative Procedures Act ("APA") ("Count Eight"); and (9) a claim for additional injunctive relief to prevent Defendants from conducting unauthorized discovery("Count Nine").

## ANALYSIS

As mentioned above, the court must rule on three pending motions.  The court first addresses Defendant Hill's October 3, 2005 motion to dismiss the claims asserted against her in her individual capacity pursuant to Fed. R. Civ. P. 12(b)(2), (5), or (6), or in the alternative Fed. R. Civ. P. 56. Second, the court addresses the Government's October 27, 2005 motion to dismiss.  Finally, the court addresses Defendant Hill's motion to strike.

### I.     Defendant Hill's Motion to Dismiss

The remaining claims asserted against Defendant Hill in her individual capacity include: (1) Count Three, asserting a violation of Due Process rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and (2) Count Five, asserting violations of 42 U.S.C. §§ 1985 and 1986.  As an initial matter, Hill contends that Berkeley-Dorchester failed to serve her with the Summons and Complaint in her individual capacity until it served her with the Revised Second Amended Complaint on September 16, 2005, more than 300 days after originally filing the Complaint.  Thus, Hill claims that this court does not have personal jurisdiction over her and that the court must dismiss the claims against her in her individual capacity pursuant to Rule 12(b)(2), for lack of jurisdiction over the person, and Rule 12(b)(5), for insufficiency of service of process.  *See* Fed. R. Civ. P. 12(b)(2) and (5).  Second, Hill contends that the *Bivens* claim must be dismissed pursuant to Rule 12(b)(6), or in the alternative Rule 56, because none of the acts alleged by Berkeley-Dorchester rise to the level of a constitutional violation.[5]

---

[5]  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs.,*

Finally, Hill claims that Count Five of Plaintiff's Complaint fails because Berkeley-Dorchester has not alleged sufficient facts to support a violation of 42 U.S.C. §§ 1985 and/or 1986. The court first begins by considering the propriety of service and then addresses Hill's substantive arguments.

### A.     Whether Defendant Hill Was Properly Served

As a threshold matter, the court believes that, despite Berkeley-Dorchester's well-intentioned efforts, it may not have properly served Defendant Hill in her individual capacity within the proper time frame. "Where damages are sought through a *Bivens* claim, personal service, and not service by certified mail, is necessary to obtain jurisdiction over a defendant in his capacity as an individual." *Pollack v. Meese,* 737 F.Supp. 663, 666 (D.D.C. 1990) (citing *Micklus v. Carlson,* 632 F.2d 227, 240-41 (3d Cir. 1980)). The failure to perfect individual service is generally fatal to a *Bivens* action. *Daly-Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir. 1987); *see also Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366 (D.C. Cir. 1997) ("[E]very court of appeals that has spoken on the question has decided that defendants in *Bivens* actions must be served as individuals, pursuant to Rule 4(e)"); Fed. R. Civ. P. 4( i)(2)(B) (providing that service on an employee of the United States "sued in an individual capacity for acts or omissions occurring in connection with the

_____

*Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

performance of duties on behalf of the United States" is effected by serving the employee as prescribed by Rule 4(e), (f), or (g)).

In the present case, Defendant Hill asserts that she was not served in her individual capacity, as required by Fed. R. Civ. P. 4(i)(2)(B), until more than 300 days after the filing of the complaint. *See* Fed. R. Civ. P. 4(m) (requiring service of the summons and complaint within 120 days). Specifically, Hill claims that on December 2, 2004, the Plaintiff sent by certified mail, returned receipt requested, a copy of the amended complaint (stating claims against Hill in her official *and* individual capacity) to the U.S. Department of Health and Human Services in Washington, D.C.; however, the reference portion of the letter listed Defendant Hill solely in her official capacity. Moreover, a mail room worker at HHS signed the return receipt. Defendant Hill claims that this service by mail fails under both the federal rules and the South Carolina rules because the mail worker was not authorized to accept service of process for her in her individual capacity.

Ultimately, although Plaintiff may not have properly served Hill in her individual capacity until September 16, 2005, the court notes that Hill has, since at least last May, had sufficient notice of the claims against her, as Hill has filed a voluminous responsive pleading. Moreover, as Berkeley-Dorchester points out, Hill may have waived her insufficiency of service defense, as the Governent's first motion to dismiss was seemingly filed on behalf of both Hill and HHS/ACF and did not raise the service issue. *See* Fed. R. Civ. P. 12(g), 12(h)(1). Given these facts, the court believes that good cause may have existed for extending the time for service. *See, e.g., Karlsson v. Rabinowitz,* 318 F.2d 666, 668-669 (4th Cir. 1963) ("[t]he real purpose of service of process is to give notice to the defendant that he is answerable to the claim of the plaintiff[,]" and "where actual notice of the commencement of the action and the duty to defend has been received by the

one served," service under Rule 4(d) "should be liberally construed to effectuate service and uphold the jurisdiction of the court . . . ."); *see also* Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action . . . or direct that service be effected within a specified time."). Regardless, however, Plaintiff's attempt to cure this procedural defect is largely irrelevant in that the court finds, as explained below, that Plaintiff has failed to state a claim in Counts Three and Five, asserted against Hill in her individual capacity.

### 1.    Count Three: Berkeley-Dorchester's *Bivens* Claim

In *Bivens,* the Supreme Court held that victims of Fourth Amendment violations by federal officers could bring suit for money damages in federal court even though no federal statute expressly authorized such relief. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. at 397 (1971). Although the Court subsequently has allowed *Bivens* actions for violations of other constitutional rights, it has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky,* 487 U.S. 412, 421 (1988); *see also Judicial Watch, Inc. v. Rosotti,* 317 F.3d 401, 413 (4th Cir. 2003) ("Following these [Supreme Court] precedents, we too have refused to extend *Bivens*.") In particular, the Court has emphasized that Congress is in a better position than the courts to weigh the competing policy imperatives involved in the creation of new remedies. *See Bush v. Lucas,* 462 U.S. 367, 389 (1983). Because of its better vantage point, Congress may preclude a *Bivens*-type constitutional action by express declaration or by creating an exclusive statutory remedy. *See Chilicky,* 487 U.S. at 421. Additionally, "special factors" may foreclose the bringing of a *Bivens* action even "in the absence of affirmative action by Congress." *Chilicky,* 487 U.S. at 421. As the Court explained in *Chilicky,* "[w]hen the design of a

11

Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." 487 U.S. at 423.

Thus, before allowing Berkeley-Dorchester to bring its *Bivens* claim, the court must determine whether Congress has expressly precluded such a suit (through specific language to that effect or through establishment of an exclusive remedy), and whether any "special factors" counsel hesitation in extending *Bivens* to allow aggrieved federal grantees to bring suits against agency officials for money damages. Under controlling Fourth Circuit law:

> [i]n order for a *Bivens* remedy to be available, a court must determine that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no special factors counseling hesitation in the absence of affirmative action by Congress; and (3) there is no explicit congressional declaration that money damages not be awarded.

*Judicial Watch,* 317 F.3d at 410.

Here, Congress has unquestionably provided statutory remedies for Berkeley-Dorchester's claims through both the Head Start Act and the Administrative Procedures Act ("APA"). For example, pursuant to the Head Start Act, Berkeley-Dorchester has a right to an administrative hearing on any adverse actions – including suspension and revocation – taken against it. *See* 42 U.S.C. § 9841(a). Moreover, the APA provides a comprehensive statutory remedy for review of any *final* HHS action. *See* 5 U.S.C. § 702. The existence of both of these remedies counsels strongly against the extension of a *Bivens* remedy to Berkeley-Dorchester's claims.[6] *See, e.g., Nebraska*

---

[6] Moreover, the court notes that a potential "special factor" exists here which would render a *Bivens* claim inappropriate. In *Bush v. Lucas*, 462 U.S. 367 (1983), the Supreme Court refused to recognize a First Amendment *Bivens* action brought by an engineer against the director of a federal space flight center. The Court held that federal employment constitutes the sort of "special factor" that makes a *Bivens* remedy inappropriate. *See id.* at 389. Likewise, Berkeley-Dorchester's status as a federal grantee could constitute a special factor rendering a *Bivens* cause of action

*Beef, Ltd. v. Greening,* 398 F.3d 1080, 1084 (8th Cir. 2005) ("When Congress has created a comprehensive regulatory regime, the existence of a right to judicial review under the APA is sufficient to preclude a *Bivens* action."); *see also Chilicky,* 487 U.S. at 414 (finding a *Bivens* action unavailable to contest alleged constitutional violations committed by individual agency employees in deciding to terminate Social Security disability benefits); *Zephyr Aviation, L.L.C. v. Dailey,* 247 F.3d 565, 572 (5th Cir. 2001) ("[P]arties may not avoid administrative review simply by fashioning their attack on an [agency] decision as a constitutional tort claim against individual [agency] officers."); *Miller v. U.S. Dept. of Agr. Farm Services Agency,* 143 F.3d 1413, 1416 (11th Cir. 1998) (finding a plaintiff's *Bivens* action precluded when he had "a statutory right to judicial review under the APA"); *Nat'l Commodity & Barter Ass'n v. Archer,* 31 F.3d 1521, 1532 (10th Cir. 1994) (finding a *Bivens* claim unavailable for alleged constitutional violations of individual agency officers in making wrongful jeopardy tax assessments).[7]  Accordingly, the court concludes that no *Bivens* cause of action is available to Plaintiff, and therefore, the court dismisses Count Three of Plaintiff's Complaint, asserted against Defendant Hill in her individual capacity.

### 2.     Count Five: Berkeley-Dorchester's 42 U.S.C. §§ 1985 and 1986 Claim

Count Five of Plaintiff's Complaint alleges that Defendant Hill engaged in a conspiracy in violation of 42 U.S.C. §§ 1985 and 1986.  In her motion to dismiss, however, Defendant Hill seeks dismissal of this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Alternatively, Defendant asserts that Berkeley-Dorchester's allegations are without

unavailable.

[7]  The Fourth Circuit has not addressed whether a *Bivens* claim exists when the APA provides a comprehensive remedy for the challenged conduct.  Given the weight of authority from other circuits and the Fourth Circuit's continued reluctance to expand *Bivens,* however, the court is convinced that the Fourth Circuit would agree with its conclusion on this point.

factual basis, entitling her to dismissal pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Section 1985 consists of two parts, that which precedes the semicolon and that which follows the semicolon.[8]  In asserting a cause of action based on sections 1985 and 1986, Plaintiff relies on the clause contained in the first part of section 1985(2) that proscribes a conspiracy "to influence the verdict, presentment, or indictment of any grand or petit juror."[9]  *See* 42 U.S.C. § 1985(2).

---

[8]  The first half of section 1985(2) provides the following:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; . . .

> . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2)-(3).  A class-based or racial animus is not an essential element for a violation of the first portion of § 1985(2).  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983) ("[I]t is clear that Congress did not intend to impose a requirement of class-based animus on persons seeking to prove a violation of their rights under the first clause of § 1985(2).").  The second portion of §1985(2), not applicable in the present matter, applies to conspiracies to obstruct justice in the state courts and reads as follows:

> or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

42 U.S.C. § 1985(2).

[9]  Plaintiff claims that Defendant Hill misunderstands the basis of the claim under section 1985(2).  (Pl. Supp. Brief in Opp. at 14.)  Specifically, Plaintiff asserts that "Defendant Hill focuses

Additionally, Plaintiff claims that this clause, "by its plain wording does not require threats of force or intimidation."  (Pl. Supp. Brief at 15.)  The court does not agree.

Rather:

The first part of § 1985(2) creates a private right of recovery against persons who by "force, intimidation, or threat" prevent parties or witnesses from attending or testifying in court.  *It also forbids the use of "force, intimidation, or threat" to influence verdicts and indictments.*  A cause of action under this section requires conspiratorial conduct that directly affects or attempts to affect parties, witnesses, or jurors in a federal court.

*McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1218 (5th Cir. 1987) (emphasis added); *see also Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir. 1979) ("To state a cause of action under 42 U.S.C. § 1985(2) (before the semicolon) it is not enough to show a conspiracy; the conspiracy must be one that has the requisite statutory purpose."); *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976) ("The first half of § 1985(2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses, or grand or petit jurors, in any court of the United States.").

Additionally, as the Ninth Circuit Court of Appeals stated:

Section 1985(2) originally was enacted as part of section 2 of the Civil Rights Act of 1871, 17 Stat. 13.  The portion of section 2 that was later codified as the first part of section 1985(2) proscribed conspiracies  "by force, intimidation, or threat to influence the verdict, presentment, or indictment, of any juror or grand juror in any court of the United States . . . ."  The current language of section 1985(2) does not contain the phrase "by force, intimidation, or threat" immediately preceding the phrase "to influence . . . any juror or grand juror."  Plaintiffs rely on this omission to argue that a claim under section 1985(2) need not allege a conspiracy to influence a juror by "force, intimidation, or threat."  This argument is meritless.  The reclassification of section 2 of the 1871 Act into the three subsections that now are codified in section 1985 did not change the substantive meaning of the 1871 Act.

on the wrong clause of section 1985(2); Defendant Hill looks to the first clause of the first part of section 1985(2) when Berkeley-Dorchester's action is based on the third clause."  (Pl. Supp. Brief in Opp. at 14.)  In any event, it is clear to the court that Plaintiff asserts a cause of action based on the first half of section 1985(2), and not the second half of section 1985(2), which applies to conspiracies to obstruct justice in state courts.

> *Kush,* 103 S.Ct. at 1487.
>
> Plaintiffs' allegations that defendants conspired to commit perjury and to conceal evidence fail to state a claim for relief under section 1985(2). The alleged actions did not influence or seek to influence a juror by force, intimidation, or threat. Even were we to accord substantive significance to the omission of "by force, intimidation, or threat," we are confident that section 1985(2) does not embrace the forms of influence alleged by plaintiffs. *Cf. Brawer,* 535 F.2d at 840 (first part of § 1985(2) proscribes conduct that directly affects or seeks to affect parties, witnesses, or jurors).

*Dooley v. Reiss*, 736 F.2d 1392, 1395-96 (9th Cir. 1984).

Here, in support of Count Five, Plaintiff alleges that Defendant Hill "released information regarding an on-going federal grand jury investigation to local media, in violation of Rule 6(c) of the Federal Rules of Criminal Procedure, and has failed to accurately release information regarding audits of Berkeley-Dorchester." (Pl. Compl. ¶ 55.) Additionally, Plaintiff asserts that "Defendant Hill arranged for numerous reviews of Berkeley-Dorchester's Head Start Program and manipulated the timing and outcomes of those reviews to produce a negative image of the program." (Pl. Supp. Brief in Opp. at 15.)

Unfortunately for Plaintiff, however, these allegations do not state a claim under section 1985(2). Simply stated, Plaintiff has failed to allege any conspiratorial conduct that has directly affected the verdict, presentment, or indictment of any grand juror. For instance, with regard to Plaintiff's claim that Defendant Hill released information regarding an on-going grand jury investigation, this claim, even if true, does not implicate any conspiracy among two or more persons to influence a grand juror through force, intimidation, or threat.[10] Moreover, with respect to

---

[10] In her motion to dismiss, Defendant Hill alleges that she did not release grand jury information. (Motion to Dismiss at 16-18.) She states, "The only information she has regarding any Charleston grand jury is what she has read in the newspaper and she has never made any public disclosure of what she read in the newspaper regarding any grand jury activity." (Motion to Dismiss at 17-18). Because the court dispenses with Plaintiff's claim pursuant to Rule 12(b)(6) for failure

Plaintiff's assertion that Hill arranged for reviews of the Head Start Program and manipulated the outcome of those reviews, again, this claim does not implicate any conspiracy among two or more persons with the requisite statutory purpose to intimidate or retaliate against jurors, witnesses, or parties.  Additionally, even assuming Plaintiff had successfully alleged a conspiracy, and even assuming the court placed greater significance on the omission of the words "by force, intimidation, or threat," immediately preceding the phrase "to influence . . . any juror or grand juror," the court is confident that, under the circumstances, Plaintiff's allegations do not state a cause of action within the ambit of section 1985(2).  Furthermore, because a § 1986 claim is dependent of the existence of a § 1985 claim, Plaintiffs also have failed to state a claim pursuant to section 1986.[11]  *See, e.g.*, *Brown*, 612 F.2d at 502; *Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir. 1977) ("Inasmuch as the Section 1985 action is insufficient, the allegations under 42 U.S.C. Section 1986 also fail."). Accordingly, the court dismisses Count Five of Plaintiff's Complaint, asserted against Defendant Hill in her individual capacity.

---

to state a claim, however, the court need not determine the whether Hill in fact released false information regarding the grand jury to the local media.  As an additional matter, the court notes that Rule 6(e) of the Federal Rules of Criminal Procedure does not establish a private cause of action. *See Finn v. Schiller*, 72 F.3d 1182, 1187 (4th Cir. 1996).

[11] Section 1986 provides the following:

[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed shall be liable to the party injured, or his legal representatives for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986.

## II.     The Government's Motion to Dismiss

In its Motion to Dismiss, the Government argues first that the court does not possess subject matter jurisdiction over Counts One, Two, Four, Six, Seven, and Eight of Berkeley-Dorchester's Complaint, Amended Complaint, and Revised Second Amended Complaint.   Accordingly, the Government seeks dismissal of these claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[12]  Second, the Government argues that Count Nine fails to state a claim upon which relief can be granted, and therefore, the court should dismiss it pursuant to Fed. R. Civ. P. 12(b)(6).[13]  A third and final section of the Government's motion to dismiss alleges that federal question jurisdiction under 28 U.S.C. § 1331 does not exist.[14]

---

[12]  When evaluating a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).  The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991).

[13]  As mentioned previously in this Order, a motion to dismiss under Rule 12(b)(6) for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

[14]  Section 1331 states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has explained that "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983); *see also Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808 (1986) (holding that the "arising under" requirement of federal question jurisdiction includes both cases in which (1) federal law created the cause of action, and (2) those which require resolution of a substantial question of federal law, even if state law created

Specifically, with regard to Counts One and Two, the Government argues that there is no case or controversy and the counts are either not ripe for adjudication or moot. With respect to Counts Four and Six, seeking relief under the Federal Tort Claims Act, the Government argues both that Berkeley-Dorchester has failed to exhaust its administrative remedies and that the United States has not waived its sovereign immunity.[15] With respect to Counts Seven and Eight, the Government argues that there has been no final agency action subject to judicial review. And finally, the Government argues that Count Nine fails to state a claim.

In an effort to proceed in an orderly manner, the court first addresses the problematic issues surrounding whether certain of Berkeley-Dorchester's claims are moot. Next, the court addresses the Government's argument that Berkeley-Dorchester failed to exhaust its administrative remedies. Finally, the court addresses the Government's argument that Count Nine fails to state a claim.

## A.    Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. To invoke the jurisdiction of a federal court, a litigant must have suffered,

---

the cause of action.).

In its motion, the Government argues that resolution of Plaintiff's claims does not "turn on whether the Head Start Act, or any other Federal law, has a construction other than the one applied by ACF, namely, that it has the authority to monitor, review, and require corrective action of its Head Start grantees." (Mot. to Dismiss at 31.) Also, the Government states that Plaintiff's "invocation of the Declaratory Judgment Act is not persuasive." (Mot. to Dismiss at 31.) However, as the court concluded in its March 31, 2005 Order, federal question jurisdiction is appropriate here for several reasons. First, Counts One and Three allege a deprivation of procedural due process as provided for by the Fifth Amendment to the United States Constitution. Moreover, Count Five alleges a violation of two federal statutes, 42 U.S.C. §§ 1985 and 1986. Frankly, the court is puzzled at how the Government can plausibly maintain that these causes of action do not arise under federal law for purposes of section 1331.

[15]  In its August 31, 2005 Order, this court substituted the United States as the proper party defendant in Berkeley-Dorchester's conspiracy and slander claims (Counts Four and Six).

or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). This requirement ensures that federal courts resolve only "real and substantial controversies admitting of specific relief through a decree of a conclusive character" and will not issue opinions "advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotations omitted). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631(1979). At that point, the court is unable to grant "any effectual relief whatever" to the parties. *Church of Scientology of Calif. v. United States,* 506 U.S. 9, 12 (1992).

Although "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot[,]" *see United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953), a case may nevertheless become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000). While it is true that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct[,] . . . the moving party must satisfy the court that relief is needed . . . [by showing] some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *See W.T. Grant*, 345 U.S. at 63. The same principles apply when the plaintiff seeks a declaratory judgment rather than an injunction. *See Chamber of Commerce v. United States Dep't of Energy,* 627 F.2d 289, 292 (D.C. Cir. 1980).

The party asserting mootness bears the burden to show that the challenged conduct cannot reasonably be expected to recur. *Id.* This burden "is a heavy one." *W.T. Grant*, 345 U.S. at 633.

To meet this burden, the defendant must demonstrate: (1) "that there is no reasonable expectation that the alleged violation will recur;" and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979) (internal quotations omitted). "When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis,* 440 U.S. at 631.

Berkeley-Dorchester argues that its claims are not moot pursuant to the voluntary cessation exception to mootness and because the present controversy is one capable of repetition yet evading review. (Pl. Response in Opp. at 14.) Essentially, Berkeley-Dorchester alleges that "Defendants have continued a campaign to deprive Berkeley-Dorchester of its Head Start Program without affording due process[,]" and that if the court dismisses this case as moot, Defendants can return to their old ways (i.e., committing "a series of arbitrary and capricious, unauthorized, and otherwise illegal final agency actions"). (*See* Pl. Response in Opp. at 15.) The Government disagrees with Plaintiff on the grounds that it has voluntarily reinstated Plaintiff as grantee and has no plans to change that revocation, and on the grounds that this reinstatement completely eradicates the need for (or the court's ability to issue) injunctive and/or declaratory relief.

Unfortunately for Berkeley-Dorchester, mootness is a claim-specific analysis which requires the court to consider the viability of each of Berkeley-Dorchester's claims for relief individually, not in the broader context of the Government's continued or future dealings with Berkeley-Dorchester's compliance with the terms of its Head Start grant. *See Daingerfield Island Protective Soc'y v. Lujan*, 920 F.2d 32, 37 (D.C. Cir. 1990) ("[C]laim specific analysis [is] required before we [can] say that appellees have met the 'heavy' burden of demonstrating mootness."). Considering Berkeley-

Dorchester's specific claims at issue in the matter *sub judice*, the court believes that certain of Berkeley-Dorchester's claims are moot, notwithstanding the voluntary cessation exception (or the exception for wrongs capable of repetition yet evading review). That is, with respect to several of Berkeley-Dorchester's claims, the Government has met its burden of demonstrating that conduct challenged by Berkeley-Dorchester cannot be expected to recur and that interim events have eradicated the effects of the alleged violations.

### 1.     Counts One and Two

In Count One of Berkeley-Dorchester's Complaint, it seeks the "entry of temporary, preliminary, and permanent injunctions prohibiting Defendants from taking the summary suspension action contained in Hill's November 9, 2004 letter [concerning asbestos issues]." (Compl. at ¶ 21.) In Count Two, Berkeley-Dorchester seeks a declaration from the court that Defendants summarily suspending it based on the asbestos issue was arbitrary and capricious and without proper authority. (Compl. at ¶ 23.) However, two factual developments render these claims moot. First, shortly after Berkeley-Dorchester initially filed this lawsuit and the court granted a temporary restraining order for a period of ten days, Berkeley-Dorchester provided the asbestos documentation that the Government was seeking. Second, after Berkeley-Dorchester provided sufficient evidence that the centers posed no asbestos risk, the Government rescinded the summary suspension on November 17, 2004. (Gov. Supp. Mem., Ex. 2) ("Please be advised that, in accord with 45 C.F.R. § 1303.12(n), the Administration for Children and Families (ACF) has determined to rescind the suspension action imposed upon [Berkeley-Dorchester. . . .   Therefore, Berkeley-Dorchester will reassume authority over the program at the close of business November 17, 2004.").

Thus, Berkeley-Dorchester has complied with the Government requirements with respect to

the asbestos documentation issue, and the Government has accepted such documentation and affirmed that this evidence is in compliance with its requirements. (*See* Gov. Supp. Mem., Ex. 2) ("We have received satisfactory evidence that Berkeley-Dorchester has conducted testing at Johns Island and New Israel Centers, adequately correcting the deficiency.").[16] Moreover, based on the Government's acceptance of the documentation provided by Berkeley-Dorchester (with respect to the asbestos issue), the Government rescinded the summary suspension, rendering it unlikely that the Government will take additional action on the asbestos issue.[17] In short, there is simply no "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive," which would warrant enjoining the Government's allegedly illegal summary suspension based on the asbestos documentation, which has been unequivocally rescinded. *See W.T. Grant*, 345 U.S. at 633 (1953); *see also Campo v. Dept. of Army*, 134 Fed. Appx. 447, 449 (Fed. Cir. 2005) (holding that a civil engineer in the Army Corps of Engineers's claim that a letter of warning was issued to her as retaliation for her whistle-blowing activities was moot, where the agency had

---

[16] While the letter did not make as complete a finding as to the Awendaw facility, the Government nonetheless acknowledged that it understood testing was underway there, and that no further action would be taken so long as that center did not serve children until Berkeley-Dorchester confirmed in writing that the Awendaw Center did not pose a risk of asbestos contamination. .

[17] This case is readily distinguishable from *Commonwealth of Virginia v. Califano*, 631 F.2d 324 (4th Cir. 1980), for example, where the Fourth Circuit applied mootness principles to a state's challenge to a decision by a federal agency concerning the state's welfare program. Although the federal agency agreed to give the state the relief it sought - a formal hearing on the state's amendment of its welfare program - the agency refused to concede that the state was entitled to that relief as a matter of right and insisted that it would continue to act as it had in the past. *Id.* at 326. Under these circumstances, the Fourth Circuit concluded that the agency had failed to carry its burden of demonstrating that there was "no reasonable expectation that the wrong [would] be repeated," and therefore held that the state's challenge was not moot. *Id.* at 326-27. In contrast, here the Government has agreed to give Berkeley-Dorchester the relief it seeks in Count One - the rescission of the summary suspension - and in no way affirms an intention to adhere to its prior course of action.

rescinded the letter, which had the effect of correcting the action about which the engineer complained and restoring both agency and engineer to the status quo ante, and it was unclear what type of additional corrective action would have been feasible or appropriate); *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991) (noting that "[w]ithdrawal or alteration of administrative policies can moot an attack on those policies."); *Otter Point Dev. Corp. v. U.S. Army Corps of Engineers,* 116 F.Supp. 2d 648, 651 (D. Md. 2000) (dismissing a case as moot when the "controversy surrounding these issues, therefore, is no longer 'live' because [the Army Corps] has consented to the requested relief."). Accordingly, Counts One and Two must be dismissed.[18]

### 2.    Count Seven

Likewise, in Count Seven of the Amended Complaint filed on November 22, 2004, Berkeley-Dorchester seeks additional injunctive and declaratory relief related to other remedial deadlines imposed by the Government. As detailed above in the Background section of this order, in September of 2004, ACF/HHS provided Berkeley-Dorchester with the Report detailing multiple areas of non-compliance with Head Start regulations, including the asbestos issue. That Report required correction of these so-called "Deficiencies" with various periods ranging from ten days (for, *inter alia,* the asbestos issue) to ninety days. Berkeley-Dorchester now complains that in the November 17 letter rescinding its summary suspension, the Government imposed unreasonable deadlines

---

[18] With respect to Count Two, in which Berkeley-Dorchester seeks a declaration finding Defendant Hill's actions arbitrary and capricious, this claim is moot because the isolated agency action upon which it was based (the summary suspension of Berkeley-Dorchester for failure to provide asbestos documentation as alleged in Count One) is moot. *See City of Houston, Texas v. Dept. of Housing and Urban Develop.,* 24 F.3d 1421, 1429 (D.C. Cir. 1994) ("[I]f a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful . . . .").

contained within the Report, a time period by which it was impossible for Berkeley-Dorchester to comply given the disruptive circumstances surrounding the summary suspension. Berkeley-Dorchester negotiated for an extra six days by which to effectuate compliance, and after the Second Amended Complaint was filed, met these deadlines. (*See* Pl. Supp. Mem. at 8.) ("Although the summary suspension had made those deadlines virtually impossible to meet, Defendant Hill allowed an extension of only six days. Through extraordinary efforts, Berkeley-Dorchester met Hill's deadlines . . . ."). However, Berkeley-Dorchester's Count Seven, filed shortly after Berkeley-Dorchester initially learned of the six-day deadline on November 22, 2004, remains pending and requests the following:

> [1] a declaration that the additional six day period granted Berkeley-Dorchester by Defendant Hill is arbitrary, capricious, and unreasonable, and . . . [2] injunctive relief preventing Defendants from taking any adverse action against Berkeley-Dorchester should Defendants determine that Berkeley-Dorchester's response to Defendant Hill's previous request for compliance documentation is unacceptable, to provide Berkeley-Dorchester with sufficient time to take the actions and to provide any additional documentation required by Defendants to demonstrate compliance of Berkeley-Dorchester's Head Start Program.

(Am. Compl. at 15-16.) As with Counts One and Two, Count Seven is now moot based on the reasoning cited above. Berkeley-Dorchester willingly admits that, while a struggle, it complied with the Government's six-day extension for providing compliance information. To the extent that Berkeley-Dorchester seeks an injunction from this court prohibiting future agency action should the agency later determine that Berkeley-Dorchester's documentation of compliance was inadequate, such a claim is not yet ripe, and the court refuses to rule on it. *See, e.g., Gasner v. Board of Super's of County of Dinwiddie, Va.,* 103 F.3d 351, 361 (4th Cir. 1996) (holding that where the plaintiff has not yet been injured by the governmental act about which it complains, review is precluded by the ripeness doctrine).

25

Finally, the court notes that "[t]he discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, is well established." *S-1 v. Spangler,* 832 F.2d 294, 297 (4th Cir. 1987). As noted, the critical issues surrounding the summary suspension based on the asbestos documentation have been resolved, and the court is unable to grant the specific declaratory and injunctive relief requested because the Government has either acceded to that relief or Berkeley-Dorchester has allegedly complied with requirements that they seek to invalidate. Moreover, for prudential reasons, the court is reluctant to insert itself into the center of an abstract and unreconciled dispute between Berkeley-Dorchester and HHS/ACF regarding myriad issues of Head Start Program compliance. Ultimately, the court is empowered only to resolve live cases or controversies, and not to manage the muddled, and at times speculative, interactions between a federal agency and its grantee.[19] Accordingly, Counts One, Two, and Seven must be dismissed as moot,[20] and for prudential reasons.

---

[19] As the Government notes, pursuant to 42 U.S.C. § 9836a, ACF must perform certain duties with respect to Head Start grantees, including conducting reviews of its funding recipients, directing remedial action when recipients do not comply with standards, and suspending or terminating funding when grantees continually fail to meet performance standards, place federal funds at risk, or actively endanger the health and safety of staff and participants. *See* 42 U.S.C. § 9836a(c), (d), 9841 (a)(2). The court references the statute to bolster its conclusion that it would be outside the bounds of this court's authority to micro-manage ACF's dealings with its grantee, as required by the plain language of an act passed by Congress.

[20] Berkeley-Dorchester contends that should the court not find the voluntary cessation exception to mootness applicable, it should nonetheless review the claims under the "capable of repetition, yet evading review" exception to mootness. *See, e.g., Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 63 (4th Cir. 1989). "The capable-of-repetition doctrine applies only in *exceptional situations, where the following two circumstances are simultaneously present*: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17 (1998) (internal citations and quotations omitted) (emphasis added). For the reasons stated above, there is no reasonable expectation that Berkeley-Dorchester will be subjected to reinstatement of the summary suspension, and should there come

### B.    Federal Tort Claims Act: Counts Four and Six

On August 31, 2005, this court issued an Order substituting the United States for Defendant Hill as the party defendant in Berkeley-Dorchester's conspiracy and slander claims (Counts Four and Six). Having substituted the United States, therefore, the next question is whether the United States is immune from suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

The doctrine of sovereign immunity bars all suits against the United States except in the event of an explicit statutory waiver of such immunity. *See United States v. Sherwood,* 312 U.S. 584 (1941). While the FTCA is one common source for a waiver of sovereign immunity, § 2680(h) of the FTCA specifically excludes "[a]ny claim arising out of assault, battery, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" from that waiver. 28 U.S.C. § 2680(h). Under this provision, Berkeley-Dorchester's slander claim is clearly barred, and therefore, the Court must dismiss Count Six. Additionally, Berkeley-Dorchester's conspiracy claim is similarly problematic, as ultimately, Berkeley-Dorchester's complaint is that the Government interfered with its Head Start contract and concomitant economic well-being. The United States has not waived its sovereign immunity for "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h); *see, e.g. JBP Acquisitions, LP v. U.S. ex rel F.D.I.C.,* 224 F.3d 1260 (11th Cir. 2000); *Daisley v. Riggs Bank, N.A.,* 372 F.Supp. 2d 61, 73-74 (D.D.C. 2005). Moreover, Berkeley-Dorchester's conspiracy claim must fail because it is based solely on the alleged slander and attempt to deprive Berkeley-Dorchester of

---

a time when the agency definitively determines that Berkeley-Dorchester has violated the consent agreements and the out-of-service orders are reinstated, "there will be ample opportunity for [them] to renew their complaint" both with this court and in the agency review process. *See Chamber of Commerce v. Dep't of Energy,* 627 F.2d 289, 292 (D.C. Cir. 1980) (per curiam).

its economic advantage, claims that are both barred by the plain language of the FTCA. *See Downie*

*v. City of Middleburg Heights,* 76 F.Supp. 2d 74, 76 (N.D. Ohio 1999) ("Count XII's conspiracy

claim rests entirely on the now-barred defamation and contract claims, and it must therefore fall as

well."). Accordingly, the court also dismisses Count Four of the Amended Complaint.[21]

### D.    Administrative Procedures Act (Count Eight)

On August 31, 2005, Plaintiff Berkeley-Dorchester filed a Revised Second Amended

Complaint, asserting a cause of action against the Government pursuant to the APA, 5 U.S.C. § 702

("Count Eight").[22] Section 702 of the APA provides that "[a] person suffering legal wrong because

of agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Additionally, pursuant to

section 704:

> Agency action made reviewable by statute and final agency action for which there is
> no other adequate remedy in a court are subject to judicial review. A preliminary,
> procedural, or intermediate agency action or ruling not directly reviewable is subject
> to review on the review of the final agency action.

5 U.S.C. § 704. Section 704 "only requires a plaintiff to exhaust his or her administrative remedies

---

[21] As an alternate grounds for dismissal of the slander and conspiracy claims against the Government, the court notes that Berkeley-Dorchester has not filed an administrative claim relating to either of these causes of action. *See, e.g., Plyler v. United States*, 900 F.2d 41 (4th Cir. 1990).

[22] Specifically, Plaintiff argues:

[T]he Federal Defendants have engaged in a deliberate course of conduct, including harassing, intimidating, and stigmatizing Berkeley-Dorchester and its directors, officers, and staff, for the illegal purpose of depriving Berkeley-Dorchester of its Head Start Program grant without due process or equal protection of law and in violation of the requirements of the Head Start Act and implementing regulations, policies, and procedures.

(Revised Sec. Am. Compl. ¶ 86.)

where a statute or agency rule makes the remedies mandatory." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (citations omitted). However, where an intra-agency appeal is not mandatory, but rather is optional, section 704 does not require a plaintiff to appeal before filing suit. *Id.* As the Supreme Court stated in *Darby v. Cisneros*:

> [A]n appeal to superior agency authority is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before the review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § [704].

509 U.S. 137, 54 (1993).

In the case *sub judice*, Plaintiff argues that judicial review under the APA became available when Defendant Hill issued the summary suspension "because a request for reconsideration at the administrative level is not statutorily required and the relevant regulation, 45 C.F.R. § 1303.12, does not provide for a stay of the suspension pending agency reconsideration." (Pl. Response in Opp. at 9.) Pursuant to 45 C.F.R. § 1303.12, a notice of summary suspension must advise the grantee "that *it has an opportunity to show cause* at an informal meeting why the suspension should be rescinded." 45 C.F.R. § 1303.12(c)(5) (emphasis added). Additionally, "[i]f the grantee requests an opportunity to show cause why a summary suspension should be rescinded, the suspension of financial assistance will continue in effect until the grantee has been afforded such opportunity and a decision has been made by the responsible HHS official." 45 C.F.R. § 1303.12(h)(1). Moreover, "[i]f the suspension continues for more than 30 days, the suspension remains in effect even if it is appealed to the Departmental Appeals Board." 45 C.F.R. § 1303.12(h)(1)(2). Clearly, therefore, the statute does not require an appeal to superior agency authority as a prerequisite to judicial review; nor does the statute make the administrative action inoperative pending any intra-agency

review. Accordingly, this court is not free to impose an exhaustion requirement.

However, as the Supreme Court noted in *Darby*:

> [T]he judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality. "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate"

509 U.S. 137, 144 (1993) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985); *see also Flue-Cured Tobacco Cooperative Stabilization Corp. v. U.S.E.P.A.*, 313 F.3d 852, 857 (4th Cir. 2002) ("Other than agency action made specifically reviewable by statute, § 704 limits the APA's non-statutory right of judicial review to final agency action."). The issue before the court, therefore, is not whether Plaintiff was required to exhaust its administrative remedies, but rather, whether any final agency action has occurred, such that Plaintiff's claim is ripe for judicial review.

"When determining whether an agency action is final for purposes of judicial review, the focus is not on the label attached to the action but on the nature of the action." *1000 Friends of Maryland v. Browner*, 265 F.3d 216 (4th Cir. 2001). "To be 'final,' agency action must 'mark the consummation of the agency's decisionmaking process,' and must either determine 'rights or obligations' or occasion 'legal consequences.' " *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 463 (2004) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

In the present case, Plaintiff claims not only that "the summary suspension was a final agency action," but also that "Defendants have committed a series of final agency actions, including issuance of various Head Start review reports, for which relief is available under the APA." (Pl.

Response in Opp. at 8.)  In support of this assertion, Plaintiff cites *Arch Mineral Corp. v. Babbit*, 104 F.3d 660, 665, 668 (4 th Cir. 1997), and *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119 (4th Cir. 1977).  In *Arch Mineral*, the court stated that, "[f]or a case or controversy to be ripe for judicial review, it must involve 'an administrative decision [that] has been formalized and its effect felt in a concrete way by the challenging parties.' " 104 F.3d at 665 (quoting *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir 1992), *citing Pacific Gas & Elec. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 200 (1983)).  The court in *Arch Mineral* also stated that, "[a] case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Id.* (citations omitted).

Similarly, in *Fort Sumter Tours*, the Fourth Circuit Court of Appeals referred to the Supreme Court's decision in *Abbott Laboratories*, stating:

> In *Abbott Laboratories*, the Supreme Court admonished lower federal courts to take a functional approach to ripeness questions.  The goals are "to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  To effect these goals, the Court suggested that lower courts consider chiefly two factors in analyzing a ripeness problem: first, "the fitness of the issues for judicial decision . . . ," and second, "the hardship to the parties of withholding court decision."

*Fort Sumter Tours*, 564 F.2d at 1123 (citing *Abbott Laboratories*, 387 U.S. at 149).  Ultimately, Plaintiff contends that pursuant to this "functional approach," Defendants' "actions reveal that they have made a final agency decision to declare Berkeley-Dorchester 'deficient' and to deprive Berkeley-Dorchester of its Head Start Program grant."  (Pl. Response in Opp. at 11.)

31

In stark contrast, however, the Government contends that "there has been no final agency action, and therefore, this Court lacks jurisdiction to address the relief sought by Berkeley-Dorchester under the APA." (Mot. to Dismiss at 23.) Essentially, the Government argues that "[t]he summary suspension of federal funds to Berkeley-Dorchester did not have a determinative consequence and was not a consummation of the agency's decision-making process." (Mot. to Dismiss at 24.) The Government also notes that the regulations governing the summary suspension process granted Berkeley-Dorchester the opportunity to submit evidence that it had corrected the alleged deficiencies, thereby allowing for revocation of the temporary suspension.[23]

Ultimately, in light of the circumstances, the court agrees with Defendant that no final agency action has occurred. First, as Defendants state, "a summary suspension is, by its nature, a temporary action prompted by an emergency situation and anticipated to be resolved within a limited time frame." (Mot. to Dismiss at 26.); *see, e.g.,* 45 C.F.R. § 1303.12 (providing procedures of a hearing and opportunity to show cause why the suspension should be rescinded). In fact, as previously mentioned, Defendants rescinded the summary suspension within days, upon Plaintiff's production of adequate asbestos documentation, as intended by the Head Start Regulations.

---

[23] Moreover, the Government notes that the regulations provide specific procedural rules for a summary suspension that exists past thirty days. *See* 45 C.F.R. § 1303.13 (providing that a notice of suspension continuing for more than 30 days shall set forth the fact that the action may be appealed to the Departmental Appeals Board). Also, when the Departmental Appeals Board upholds an administrative action, the Head Start Act contemplates judicial challenges under the APA. *See* 42 U.S.C. § 9841(d) ("In any case in which a termination, reduction, or suspension of financial assistance under this subchapter is upheld in an administrative hearing under this section, such termination, reduction, or suspension shall not be stayed pending any judicial appeal of such administrative decision."). Defendant states: "Taken together, these procedures create a scheme that provides various layers of review to agency action. They evince a Congressional intent to have challenges to Head Start enforcement addressed at the administrative level balanced by judicial review." (Mot. to Dismiss at 25.)

Accordingly, the court is unable to conclude that the summary suspension was a consummation of the agency's decisionmaking; nor can the court conclude that the summary suspension had a determinative consequence on the parties in light of the rescission. Moreover, Plaintiff's vague assertion that Defendants have engaged in "a series of final agency actions, including issuance of various Head Start review reports," does not save its APA claim from dismissal for similar reasons. In short, as previously stated in this Order, the court is reluctant to insert itself into the center of an abstract and unreconciled dispute between the parties absent a live case or controversy. Accordingly, in the absence of a final agency action, which reflects the consummation of the agency's decisionmaking and determines the parties' legal rights, the court concludes that the present controversy is not fit for judicial review. The court therefore dismisses Count Eight of Plaintiff's Complaint.

### E.    Claim for Additional Injunctive Relief (Count Nine)

Count Nine of Plaintiff's Revised Second Amended Complaint requests additional injunctive relief "prohibiting Defendants from obtaining unauthorized discovery under the pretext of reviewing Berkeley-Dorchester." (Pl. Rev. Sec. Am. Compl. ¶ 94.) In its motion to dismiss, however, the Government contends that Count Nine fails to state a claim upon which relief can be granted in that it seeks only to prevent Defendants from doing that which they are required by statute to do. (*See* Mot. to Dismiss at 29-30.) ("Count Nine amounts to nothing more than a plea to this Court to deprive ACF of its ability to administer its statute and relieve Berkeley-Dorchester of the obligations that it accepted upon becoming a Head Start grantee.").

The court agrees with Defendants. First of all, pursuant to 42 U.S.C. § 9836a, ACF must perform certain duties with respect to Head Start grantees, including conducting reviews of its

funding recipients, directing remedial action when recipients do not comply with standards, and suspending or terminating funding when grantees continually fail to meet performance standards, place federal funds at risk, or actively endanger the health and safety of staff and participants.  *See* 42 U.S.C. § 9836a(c), (d), 9841 (a)(2).  For instance, § 9836a(c) provides for the following reviews of designated Head Start agencies: (1) a full review of each agency at least once during every three-year period; (2) a review of each newly designated agency immediately after completion of the first year; (3) followup reviews including prompt return visits to agencies that fail to meet the standards, and (4) other reviews as appropriate.  42 U.S.C. § 9836a(c)(1)(A)-(D).  Also, the Head Start Act provides specific rules for the handling of and access to records.  *See* 42 U.S.C. § 9842(a).  As a whole, therefore, these regulations require ACF to conduct certain reviews, and they require grantees to provide  reasonable access to records.  Accordingly, it would be outside this court's authority to enjoin Defendants from doing that which they are required to do by the plain language of an act passed by Congress.  Therefore, the court dismisses Count Nine of Plaintiff's Complaint.

## III.    Defendant Hill's Motion to Strike

On November 30, 2005, counsel for Plaintiff submitted an affidavit arguing that "the court's determination regarding the fifth and sixth causes of action, as well as conversion of Hill's motion to dismiss to a motion for summary judgment, should be continued to allow depositions to be taken and additional written discovery to be had."  (Aff. of Tecklenburg at 2.) On December 16, 2005, Defendant Hill moved to strike Attorney Tecklenburg's affidavit, alleging that the affidavit has no basis in law or fact and stating that the court should dismiss Hill from this action without further

discovery. Because the court grants Defendant's motion to dismiss[24] (and the Government's motion to dismiss for that matter), Hill's motion to strike is hereby rendered moot.

## CONCLUSION

It is, therefore, **ORDERED,** for the foregoing reasons, that Defendant Hill's motion to dismiss the claims asserted against her in her individual capacity (Counts Three and Five) is hereby **GRANTED**.

It is further **ORDERED** that the Government's motion to dismiss the remaining claims (Counts One, Two, Four, Six, Seven, Eight, and Nine) is hereby **GRANTED**.

It is further **ORDERED** that Defendant Hill's motion to strike is rendered **MOOT**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 24, 2006**

---

[24] In any event, the court ruled on Hill's motion to dismiss pursuant to Rule 12(b)(6) and not Rule 56.

35